<div style="float:right">CONNOLLY<br>v<br>AUTENRIETH.</div>

concluded from the continued silence of the defendant, after notice, that this feature of the judgment was not objected to. The first complaint made was upon the application for a re-hearing. Neither arguments nor authorities were necessary to satisfy us of the error into which the district judge had fallen on this point. The error was manifest, and had attracted our notice, and we only desired to be informed whether the defendant considered it more onerous than a judgment for the specific property, and desired its correction. The original decree must be changed as regards the children of *Mrs. Elliott* to one for the lot claimed.

It is, therefore, ordered that so much of the judgment appealed from as awards to *Eleanor Connolly*, as tutrix of her minor children *Mary G. Elliott* and *William Elliott*, the sum of $1,500, with legal interest, be reversed; and that said *Eleanor Connolly*, as tutrix of her said minor children, recover of the defendant *Sarah Connolly*, the lot of ground claimed by them in the petition, to wit, lot number nine in the square bounded by Colyseeum, Robin, Magazine and Race streets, in faubourg Annunciation, in Municipality no. Two, of the city of New Orleans, according to a plan drawn by Joseph Pilié, on the 24th November, 1838, and deposited as plan no. 19, in the book of plans of J. B. Marks, notary public. In other respects, the judgment appealed from is affirmed ; the appellees paying the costs of this appeal, and the defendants those of the court below.

............................................................

## ADAMS *v.* HARRISON.

No judgment can be rendered in favor of a party, declaring him entitled to a right of way over the estate of an adjoining proprietor on the ground of his being cut off from access to the public road or river, without showing, by proof of where the shortest road can be obtained with the least injury to the party required to submit to the servitude, from which of the adjoining proprietors the passage may be legally exacted. It may be that the passage is not due from the party from whom it is claimed, but from another contiguous proprietor.

<div style="float:right">4 165|<br>50 593|</div>

APPEAL from the District Court of Iberville, *Nicholls*, J. *Deblieux*, for the plaintiff. *Micou* and *Labauve*, for the appellant. The judgment of the court was pronounced by

KING, J. The plaintiff sets forth in his petition three causes of action. *First:* He alleges that he is the owner of a tract of land fronting on the Mississippi river, measuring eight arpents, more or less, in front, by eighty arpents in depth, the side lines having an opening of ten degrees toward the rear, and complains that the defendant, *Harrison*, has unlawfully and without title, entered upon and taken possession of a part of this tract upon which he has committed various acts of waste. *Secondly :* He alleges that two bayous which pass through his plantation, and serve as natural drains, have been obstructed by the defendant by means of dikes and embankments, to the injury of his plantation. *Thirdly :* It is alleged that the defendant, pretending to have a right of way, is in the daily habit of passing over a portion of the plaintiff's land with his servants, wagons, &c., to his injury and annoyance. The petition concludes with a prayer that the defendant be decreed to restore that portion of the plaintiff's land, of which he has taken wrongful possession; that he be required to remove the obstructions which he has placed in the natural drains or bayous running through the plain-

ADAMS
*v.*
HARRISON.

tiff's plantation; and that he be compelled to desist from the use of a part of the plaintiff's land, as a way,

The defendant, in his answer, avers that he is the owner of a plantation lying in the rear of and adjoining the plaintiff, composed, in part, of two lots, purchased from the United States, which lots include the land claimed by the plaintiff in this action. That the bayous were closed by his vendor, *Botts*, more than ten years before the inception of this suit, with the knowledge and consent of the front proprietor; that the front proprietor had rendered the natural servitude more burthensome, in consequence of which *Botts* had constructed these works for his own protection, and had made a canal sufficient to discharge the waters which accumulated in the bayous. He further avers that the road which he uses was made by those under whom he holds, more than ten years prior to the commencemen of this suit, and was granted by the front proprietors for the use of his plantation, and has ever since been kept in repair, and used by himself and those under whom he claims. He also claims the servitude of way, by the prescription of ten years.

The three issues presented by the pleadings were all decided in favor of the plaintiff in the court below, and the defendant has appealed.

No questions in regard to the titles of the parties arise. Those of the plaintiff are spanish grants, confirmed by act of Congress, and those of the defendant were acquired by purchase from the United States.

The controversy in relation to the land, of which it is alleged that the defendan[t] has taken illegal possession, is, in reality, one of boundary, the upper side line and the rear line of the plaintiff being those which are contested. The defendant contends that the direction of the side line is not in accordance with the original survey, and that its length is greater than is authorized by the plaintiff's title, in consequence of which it is made to include a part of the land acquired by him, or his vendor, from the United States.

The plaintiff holds under two grants. The first for about eight arpents front, by forty in depth, with a divergence in the side lines of ten degrees, and the second for the double concession of forty arpents by extending the side lines of the front tract.

It appears from the evidence that the plaintiff, and those under whom he holds, have always possessed the front tract by the boundaries which he now claims ; that the side lines, as they now exist, have been established by fences and ditches for upwards of forty years, as far back as the extremity of the front concession; that as late as twenty years ago, there were trees bearing the surveyor's marks, along the whole length of the plaintiff's side lines, which have since disappeared from the front portion of the land; that, in 1806, *Lafon* made a survey of the entire tract, and placed boundary posts on the whole length of the side lines, and that the plaintiff's fences and ditches now occupy the same ground which they did at the date of *Lafon's* survey.

The upper side line of the plaintiff's front concession measures forty-two and two-thirds arpents in depth. At that distance from the present bank of the river, stands an old post, which appears to have been always recognized as the upper extremity of the front concession, although the grant is for but forty arpents in depth.

The townships in which the lands of both parties are situated, were surveyed by the United States in 1839. The instructions of the government to the deputy surveyors require them to reëstablish the original lines of private claims when they can be found, when the excess in the quantity of the tract is not greater than forty acres. Acting under these instructions the United States surveyors re-

traced the plaintiff's lines, and reëstablished the rear boundary of the upper line of the front tract, at the point at which the old post now exists, forty-two and two-thirds arpents from the river, and thence extended the line with the same direction forty arpents towards the rear for the double concession. In their operations they were aided by the plan of the front tract of the adjoining proprietor. Their survey has been returned and approved.

A survey of the lands in controversy was also made under an order of the court granted in this cause. The surveyors returned a plat of the lands, and a report of their operations. They ascertained the upper side line of the plaintiff, as represented on their plat, to be the line as run by the surveyor of the United States. This was determined by identifying the old boundary posts on the front; by discovering the stumps of the boundary trees mentioned in the United States survey at the extremity of the front concession, forty-two and two-thirds arpents from the river, and by the surveyor's marks or line trees, which extended back to within a short distance of the defendant's clearing. They also ascertained the rear line as run by them to be identical with that of the United States surveyor.

It is true that the plaintiff's upper line exceeds eighty arpents in length, that it varies slightly from the course of the original survey, and that the superficial quantity of the entire tract, as ascertained by the surveyors appointed by the court, exceeds that which the instructions of the government to its deputies are said to authorize. It is also true that, although the surveyors appointed by the court found the upper and rear lines of the plaintiff's land, as they actually exist on the ground and as they were traced by them, to be the lines run by the United States surveyor, still their measurements do not exactly correspond with those of the United States survey, as represented in the township map, and consequently the superficial quantities of the two surveys differ. We do not deem it material to enquire which of the surveys is erroneous, as these discrepancies can in no wise affect the decision of the cause. The actual lines of the United States survey have been determined. Those lines were intended to reëstablish the original lines and boundaries of the plaintiff's tract, and correspond with his possession, and the claim he now asserts. Notwithstanding the deviation in the course of the upper line, and the excess in the quantity of the tract, the survey of the township has been approved, and the United States have permitted the plaintiff to hold the excess, whatever it be, as an integral part of his tract. The same survey determined the lines of the defendant, and was the guide of the government in disposing of the lands which were subsequently purchased by the vendors of the defendant, so that no conflict between the lines of the parties does or can occur.

If it be true that the excess of the plaintiff's tract is greater than that authorized by the regulations of the land department, the error can only be corrected by the government. The defendant cannot be permitted to go upon any portion of the land within the plaintiff's boundaries which he may think fit, and take possession of this excess, on the ground that the plaintiff is without title to it. The government permits the plaintiff to hold this excess, and the court did not, in our opinion, err in requiring the defendant to surrender that portion of the land in his possession, which is included within the plaintiff's line.

The next question at issue between the parties is, the servitude of drainage. It appears that two bayous or natural drains pass through the plantation of the plaintiff, and, running towards the rear, traverse the land of the defendant. These drains have been intersected by a canal, which receives their waters, and conveys them to swamps in another direction, and the channels of the bayous

have been filled up by embankments of earth and other obstructions, leaving no other passage for the water than the canal.

As the proprietor of the lower estate, the defendant owes the servitude of drainage to the plaintiff, and is not permitted to impede the natural flow of the water, nor to divert its course. C. C. arts. 656, 657. He contends that the canal affords as free a passage for the waters, as the bayous which he has closed; but this position is not supported by the testimony. It is, on the contrary, shown that the canal is not capable of discharging so large a volume of water as the two bayous, and that the drainage of the plaintiff has been injured by the obstructions thrown across the streams. The alleged assent of the front proprietor to the construction of the embankments across the bayous, is also repelled by the testimony. The front proprietor distinctly objected to the works, although, at that time, no measures were taken to arrest them, or to cause the obstructions to be removed. The court did not, in our opinion, err in maintaining his claim for their removal.

The third issue presented is the right of way. The defendant has not, in his answer, based his right to the servitude claimed, on the ground that his estate is enclosed, and that from its position he can legally claim a passage over the plaintiff's land to the public road or the river, nor does such appear to be the fact, from the evidence before us. It has nevertheless been assumed by the defendant's counsel in argument to be true. The defendant, in his pleadings, rests his claim on the alleged consent of the plaintiff's vendor that the right of passage should be exercised over his land, and contends that, the place having been fixed where the road should pass, it can no longer be changed, unless it may be for the reasons for which such changes are permitted by law. The evidence in relation to the alleged grant of the servitude by the plaintiff is that, about ten years since, *Botts*, the former proprietor of the lands now owned by the defendant, with the permission of the plaintiff's vendor, repaired and made passable a lane between the plaintiff and his adjoining proprietor, and that *Botts*, and those holding under him, have been permitted to use it from that time until the commencement of this suit. *Botts* applied to the plaintiff's vendor for a right of way through this lane, which the evidence shows was positively refused. The front proprietor appears to have granted the temporary use of the road only, but declined recognizing an absolute right of passage. This permission cannot be considered as a grant of the servitude of way, or as an acknowledgment that a passage was due over the land now owned by the plaintiff.

If it be assumed that the defendant's estate is so enclosed as to entitle him by law to a passage to the public road, still the evidence in the record is not such as would authorize us to decree to him the exercise of the right over the land of the plaintiff. The facts necessary to determine the controversy on that hypothesis are not disclosed.

The 696th article of the Code provides that: "The owner of the estate which is surrounded by other lands has no right to exact the passage from which of his neighbors he chooses. The passage shall be generally taken on the side where the distance is the shortest from the enclosed estate to the public road. Nevertheless, it shall be fixed at the place least injurious to the person on whose estate the passage is granted." The 695th article provides that the proprietor who claims a passage shall pay an indemnity for the right.

Now, conceding that the defendant is cut off from access to the public road or river, by surrounding proprietors, we are not informed by the evidence from which of his neighbors the right of passage may be legally exacted. It is not

shown over whose land the shortest way may be obtained, and with the least injury to the party who may be required to submit to the servitude, nor what indemnity should be paid. *Broussard* v. *Etié*, 11 La. 399. It may well be that the passage is not due by the plaintiff, but by another neighbor. The district judge did not, in our opinion, err in maintaining the plaintiff's right to forbid the further use of this road by the defendant. But as the terms of the judgment may be considered as concluding the defendant from hereafter claiming a way upon different grounds, it must be amended by reserving his rights in this respect.

It is, therefore, ordered that the judgment of the District Court be amended by reserving to the defendant the right to institute further proceedings to determine his right to a way over the land of the plaintiff, and, thus amended, that it be affirmed; the appellee paying the costs of this appeal, and the appellant that of the court below.