The opinion of tlie Court was delivered by
Pociié, J.
This suit presents questions of drainage, damages, and the right to change a public road.
Plaintiff, owning a large tract of land adjacent to that of defendant, both fronting on Bayou De Siard, with lines running north and south, complains that defendant has recently cut across his plantation, in an easterly direction and in other directions, several ditches, by means of which he lias diverted rain waters from their natural flow and thrown them over plaintiff’s cultivated lands, which have in consequence been overflowed to his great injury and loss. He also complains of a change made, without legal authority by defendant, in a public road leading from Monroe to Bastrop, in this State, and to Vicksburg, Mississippi, by which change ho has impeded the travelling and hauling facilities between plaintiff’s plantation and Monroe, his shipping point.
I-Ie prayed for a writ of injunction, forbidding the acts complained of and for damages resulting from losses, and for expenses necessarily incurred in building a levee for the protection of his lands from the effect of the surplus waters thrown on the same through the acts of' the defendant.
For answer, the defendant admits to have cut the ditches complained of, hut avers that such ditches being cut conformably to the natural fall of the lands, has not increased the volume of waters which would naturally flow pn plaintiff’s lands, as the lower estate ; and he justifies the change made by him on the public road, by a special authorization of the Police Jury of Ouachita Parish, to whom devolves by law the *937 control of all public roads in tlie parish. In reconvention he charges the construction of the levee or dam by plaintiff, as illegal and an unwarranted interference with a natural drain, in consequence of which defendant’s lands have been overflowed and damaged.
He prays for the removal of the obstruction made to the natural drain by plaintiff, and for damages caused by plaintiff’s injunction and by his suit, which defendant alleges to be malicious and without probable cause.
The District Judge rejected plaintiff’s demand, granted defendant’s reconventional demand, and allowed him damages in the sum of seven hundred dollars, aud plaintiff appeals.
Under the law governing like cases, the main issue presented in this suit involves the consideration of the following questions:
1. Does plaintiff’s land owe a servitude of drainage to defendant’s adjacent plantation ?
2. Has the defendant done anything whereby the natural servitude, which may be due by plaintiff’s lands, has been rendered more burdensome?
The question involving tire legality of the change in the public road, which has been engrafted in the controversy, will be considered separately as a distinct proposition. The law under which the rights of the contending parties are to be tested and settled is very clearly announced in the textual provisions of our Code, and the numerous adjudications of our courts on this subject, which is of vital importance to the owners of the soil in Louisiana, have presented an only difficulty • which was to correctly apply the facts presented in each particular case.
In the case of Gnesnard vs. Bird, 33 An. 796, we had occasion to make a thorough examination of the law and an exhaustive review of our jurisprudence on this question.
This review resulted in the expression of conclusions which we recently reaffirmed in the case of Kennedy vs. McCullom, 34 An., not yet reported. Prom our jurisprudence, as thus firmly established, we understand that the issues in this case are to be tested under the following rules:
The owner of the lower lands of two adjacent estates can do no act which would impede the natural flow of waters on his lands, from those of the higher estate. The owner of the superior estate may make all drainage works which are necessary to the proper cultivation and to the agricultural development of his estate. To that end, he may cut ditches and canals by which the waters running on his estate may be concentrated, and their flow increased beyond the slow process by which they would ultimately reach the same destination.
*938 But tlie owner of the superior estate cannot improve his lands to the injury of his neighbor, and thus he will not be allowed to cut ditches or canals, or do other drainage works by which the waters running on his lands will be diverted from their natural flow, and concentrated so as to flow on the lower lands of the adjacent estate at a point which would not be their natural destination, thus increasing the volume of water which would by natural flow run over or reach any portion of the lower adjacent estate, or to drain over his neighbor’s lands stagnant waters from Iris, and to thus render the .servitude due by the estate below more burdensome. C. C. Art. 660; Martin vs. Jett, 12 La. 501; Becknell vs. Wiendahl, 7 An. 291 ; Sowers & Jamison vs. E. Shiff et al., 15 An. 300; Barrow vs. Landry, 15 An. 681; Delahousaye vs. Judice, 13 An. 587; Guesnard vs. Bird, 33 An. 796; Kennedy vs. Mc-Cullom, 34 An.
We shall now undertake the task of testing the facts of this case by those principles which are substantially recognized by both parties, and which rest on a foundation too solid to admit of discussion or even to justify comment.
As could be naturally expected in a case like this, characterized by a great deal of acrimony and animosity between the parties, the testimony of witnesses is considerably conflicting, and the search for the truth in a voluminous record containing a mass of irrelevant testimony, has by far been the most painful and most laborious part of our examination of this controversy. And our lack of acquaintance with the numerous witnesses who testified, and our consequent inability to absolutely test their veracity and credibility, would have left serious doubts on our minds as to the correctness of our conclusions, had it not been for the very material assistance which we received from maps made by skilled and competent surveyors, under the orders of the District Court, giving with mathematical precision, by means of levels, the exact rise and fall of the lands, and thus settling the question of the natural flow of waters.
After a careful perusal of all the evidence in the record, and a patient and tedious study of the official maps, filed with the transcript, we have found the following as the established facts bearing upon the issues in this case:
Defendant’s plantation, which adjoins that of plaintiff, lies west of the latter, and is composed of three different tracts forming, imtil a few years ago, three distinct plantations, known as the Gleason, the Dowell and the Magenta.
On Bayou De Siard, like on all other water courses in Louisiana, the fall is from the front to the rear, being on these plantations from north to south, and we find that previous to the .purchase of these *939 various tracts of land by the defendant, the system of drainage used on each place by the previous respective owners, was by means of leading ditches running from the front to the rear of each property. With the exception of this natural fall, and of several ponds and low swales or sloughs, the surface of these lands is a flat level, interspersed by a few small ridges, and slightly elevated points or diminutive mounds. On the eastern line of plaintiff’s front plantation there begins a kind of stream or natural drain, called a “slough” by plaintiff and his witness, and designated by defendant and his witnesses as a “ bayou,” with the cognomen of “ Bennet’s Bayou,” which, for convenience sake, we shall adopt in this opinion. This drain runs across plaintiff’s lands in a westerly direction, and crosses into defendant’s lands in the same direction, up to within a short distance from a pond situated in the eastern part of the former Gleason tract, known as “ Willow Pond,” which lies a short distance north of the Monroe and Bastrop road. The bayou thence runs nearly due south, until it takes a southeasterly direction and again crosses into plaintiff’s lands, near the northern extremity of his rear plantation, known as “ Fox Hill Field,” and then continues in an easterly course.
The main ditch complaiued of begins at a point in the Monroe and Bastrop road, at the crossing of the former boundary line between Magenta and Dowell, and runs east until it empties into Bennet’s Bayou, as just described. Another ditch begins at the southern extremity of Willow Pond, and running nearly due south empties into the first mentioned ditch.
The evidence shows that “ Willow Pond ” is the lowest point on the north of the public road, on either of defendant’s three tracts of land; and that the most natural fall on all three of the tracts from the north, the east, and the northwest, is to that pond, and that the pond has no natural drain or outlet.
The evidence also shows that the natural fall from the point where the east running ditch begins, is not towards the “ Willow Pond,” and that this ditch is cut through a ridge elevated at one point more than two feet above the level of the starting point of the ditch.
From the evidence, we are satisfied that the most practicable and efficient drainage of all three of the tracts north of the public road, would be by a ditch beginning at the southwestern extremity of “ Willow Pond,” running south by west, so as to empty into “ Pin Oak Pond,” the lowest point on all defendant’s lands ; which pond discharges its waters in a slough running in a southeastern direction, and which has necessarily a lower water level than the pond.
From the evidence, it appears plain to us that the only servitude due by plaintiff’s lands to defendant’s estate is to the eastern portion of *940 the Gleason place. Hence, we conclude that by cutting the ditch running east, he has diverted waters from their natural flow, and concentrated other waters, so as to make them reach plaintiff’s lands at a point which they would not have ultimately reached by slow process, as their natural destination; and that by draining by the southern bound ditch connecting with the former his Willow Pond, he has thrown in Bonnet’s Bayou, and by it on plaintiff’s lands, stagnant waters which would have naturally remained on his own lands, and that these acts fall within the prohibition contained in the Code, and that defendant has thus, by his acts, increased the burden of the servitude due by the lower estate of his neighbor.
The evidence shows that such a course is not the only one at his option for the accomplishment of the laudable, purpose of facilitating the cultivation of his lands, of increasing their productiveness and enhancing their value. Hence, in our opinion, plaintiff’s complaint was well founded in law, and he was entitled to the relief which he invoked from the courts.
But it follows as a corollary, from the proposition established in this opinion, that plaintiff was wrong in erecting the levee or dam which defendant complains of.
The error of his opponent could not justify an error on his part, or authorize him to take the law in his own hands.
As to the change made in the direction of the public road by defendant, the evidence shows that he was specially authorized thereto by an ordinance of the Police Jury, and that the change was made under the supervision of the road inspector.
The argument of plaintiff, that such a change was not preceded by the consent of the “ contiguous” property owners, falls under the evidence which shows that both the old and the new roads are on lands owned exclusively by the defendant, and that, therefore, he was the only “ contiguous ” property owner entitled to be consulted in the premises. As the Police Jury is vested by law with the full control of the public roads, we have no concern with the consideration that the now road may not be as good or as convenient to plaintiff and the public generally, as the old road.
On the question of damages, we find that both parties have reciprocally violated the law, and justice requires that we should leave them in the condition brought about by their own acts.
Hence, we shall allow no damages on either side. 15 An. 681.
On the question of costs, we think that defendant is entitled to his costs on his reconventional demand in the lower court, but that he must pay all other costs.
*941 It is, therefore, ordered and decreed, that the judgment of the lower court be amended in the foliowing particulars:
1. In rejecting plaintiff’s demand for the abatement of the nuisance occasioned by the construction of defendant’s ditches, two from Magenta and one east, and of another ditch connecting therewith and beginning at “Willow Pond,” and it is ordered and decreed, that said ditches be declared illegal, and that the defendant be enjoined from continuing said ditches and to fill and stop the same, and that in default of his so doing, within sixty days from the date of this judgment, the sheriff be ordered to forthwith fill and close said ditches, previous to his destroying the levee or dam ordered to be removed by the District Court.
2. That such judgment be further amended, in so far as it condemns plaintiff to damages, which are hereby denied, and that as thus amended, said judgment be affirmed. Costs of appeal and of the lower court on the main demand to be paid by defendant, and the' costs of his reconventional demand to be paid by plaintiff.