### MARTIN *vs.* JETT.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF RAPIDES, THE JUDGE THEREOF PRESIDING.

Where two estates are situated adjacent to each other, the one below owes to the other a natural servitude, to receive the waters which run *naturally* from it, provided the industry of man has not been used to create that servitude.

The owner of the superior estate, cannot make on his own land any works which would change the natural passage of the water upon the one below, owing the servitude, by collecting it upon a single point and giving it thereby a more rapid current, &c.

The owner of the superior estate may, nevertheless, make any work useful and necessary to agriculture, as furrows in a field, &c., or even ditches;

WESTERN DIST.
*Oct.* 1838.

MARTIN
*vs.*
JETT.

not for the purpose of making the water flow upon the adjacent land, but for the purpose of improving and cultivating his land, and making it more healthy. He is not, however, to ameliorate his own land to the injury of his neighbor.

This is an action for damages occasioned by the defendant's stopping up the drains of his plantation, and to have the same kept open.

The plaintiff alleges, that he is the owner and occupant of a plantation fronting on Red River, and bounded below by the plantation of the defendant ; that within a year past the latter illegally and unjustly erected a dam across a drain common to both, but on the edge of his own, and thereby obstructed the natural flow of the water from the petitioner's land through that of the defendant, into a certain bayou below, where it had always been accustomed to flow ; that, by reason of the illegal conduct of the defendant, he has caused a considerable quantity of his (petitioner's) land to be overflowed, whereby he has sustained damage to the amount of five thousand dollars. He prays judgment for his said damages, and that the defendant be required to demolish his dam, and his obstruction to the drain of the water from his plantation.

The defendant pleaded a general denial ; and avers, that instead of injuring the plaintiff, the latter had caused him much damage and injury, by digging ditches, and throwing the water on his arable lands, to his damage five thousand dollars, for which he prays judgment in reconvention, and that the plaintiff be condemned to stop up his ditches, &c.

Upon these pleadings and issues, the cause was first tried by a jury, who returned a verdict upon the evidence exhibited, for the plaintiff, in the sum of three hundred dollars in damages, and that the obstructions of the defendant be removed by him.

A new trial was granted on the application of the defendant.

On the second trial a jury was waived. The district judge gave judgment for the plaintiff. He remarked, "that

the fact was well established, not only by the testimony, but was shown from the formation of the country, that the general surface of the defendant's plantation and land is lower than that of the plaintiff, which is caused by the current of the river on one side and a bayou on the other ; (shown by a diagram on file.)   When there was any large accumulation of water on the land of the plaintiff, the surplus flowed upon the land of the defendant, even before any impediment was made by either.

"This being the case, it is clear, according to the provisions of the Louisiana Code, the defendant could not raise any embankment, as he has done, above the natural surface, to prevent the waters from flowing in this direction, and thereby reflow back on the plaintiff." *Louisiana Code,* 656 ; *Nap. Code,* 640.

"The defendant complains, that the plaintiff committed the first wrong by collecting the water on the surface of his field, by means of ditches and drains, and sending it down more suddenly on him below, and rendering the natural servitude more onerous and burthensome, contrary to a provision in the same article of the Code."

On the whole, the district judge came to the conclusion that the plaintiff had about five or six acres of cotton injured by the embankment, worth one hundred and forty dollars, for which judgment was rendered, and that the obstruction to the drain and flow of the water, be cleared.

The defendant appealed.

*Dunbar,* for the plaintiff.

*Winn, contra.*

*Bullard, J.,* delivered the opinion of the court.

The plaintiff seeks to recover damages from the defendant, for illegally erecting a dam or embankment on his land adjoining that of the plaintiff, whereby the natural flow of waters has been obstructed, and his land has been overflowed.   The defendent, in answering, denies that he has

WESTERN DIST.
† Oct. 1838.

MARTIN
vs.
JETT.

done any thing to the injury of the plaintiff, but alleges, that the plaintiff, on the contrary, has done him great damage, by cutting artificial drains or ditches, on his adjoining tract of land, by means of which his arable lands are overflowed; and he claims damages in reconvention. There was judgment for the plaintiff, and the defendant appealed.

*Where two estates are situated adjacent to each other, the one below owes the other a natural servitude, to receive the waters which run naturally from it: provided, the industry of man has not been used to create that servitude.*

The parties are owners of adjacent tracts of land, and it is clearly shown, that the defendant's tract, which is situated below, owes a servitude to that of the plaintiff, to receive the waters which run naturally from it. The nature and extent of this servitude is clearly defined by the code; it is to receive the waters which *naturally* flow from the estate situated above, provided the industry of man has not been used to create that servitude; the proprietor below is not at liberty to raise any dam, or make any other work to prevent this running of the waters, and the proprietor above can *do nothing* whereby the natural servitude may be rendered more burdensome. *Louisiana Code, article* 656.

If we were to take this last clause in its strict literal sense, no doubt would remain on our minds but that the plaintiff, by cutting numerous ditches on his land, leading to a central reservoir, had greatly aggravated the servitude due by the adjoining estate. By means of such canals, the waters which would otherwise remain stagnant, in several ponds in different parts of the tract, or gradually flow on to the defendant's land, exposed to evaporation, when spread over a wider surface, are collected, and poured in a mass upon his neighbor, and during heavy rains might seriously injure his crop.

But it is contended, that although our code contains no explanatory article, similar to that in the Code Napoleon, which, in controversies like the present, directs the tribunals to decide in such a manner as to reconcile the respect due to property with the interests of agriculture, yet such ought to be the interpretation of the article in question.

Let us see to what extent the corresponding article in the Code Napoleon, has been thought, by able jurists in France, to authorize any artificial works, by which the servitude

might be rendered more onerous, with a view of favoring the <span style="float:right">WESTERN DIST.<br>*Oct.* 1838.</span> great interest of agriculture.

Duranton, to whose work our attention has been directed, in commenting upon the 640th article of the Napoleon Code, which forbids the owner of the superior estate to do any thing which might aggravate the condition of the inferior one, says, "Thus, he cannot make on his land any works, which would change the natural passage (immission) of the waters upon the inferior estate, either by collecting it upon a single point, and giving it thereby a more rapid current, and more apt to carry down sand, earth, or gravel, upon the land, or by directing upon a point on the same land a much greater volume of water than it would have received without such works," and he cites *Book* 1 *of the Digest, section* 1. 1 *Duranton, No.* 164.

<div style="float:right;width:30%">
MARTIN<br>
*vs.*<br>
JETT.

The owner of the superior estate, cannot make on his own land, any works which would change the natural passage of the water upon the one below owing the servitude, by collecting it upon a single point and giving it thereby a more rapid current, &c.
</div>

But the same author proceeds to say, that the owner of the superior estate may make any work upon it necessary, or simply useful to the cultivation of his land, such as furrows in a planted field. He may, also, in planting vines, or forming a meadow, make ditches for the irrigation of the meadow, or for the purpose of rendering his vines more healthy and vigorous. *Ibid, No.* 165.

We are by no means disposed to give to the code such an interpretation as would, in effect, condemn to sterility the superior estate. That every man has a right to clear and cultivate his land, cannot be doubted. The clearing of land, and fitting it for agricultural purposes, is not calculated to render this kind of servitude more onerous. On the contrary, lands, it is well known, become more dry by being cleared, because evaporation goes on more rapidly. But it is one thing to clear and cultivate arable lands, and another thing to reclaim lands naturally covered with stagnant waters, in such a way as to throw the mass of water, which would naturally remain in pools or ponds, upon the lands of one's neighbor, situated below. The Roman law, which, perhaps, forms the best anticipated commentary upon this part of our code, permitted ditches to be cut by the superior owner, not for the purpose of making the waters flow upon

<div style="float:right;width:30%">
The owner of the superior estate, may, nevertheless, make any work useful and necessary to agriculture, as furrows in a field, &c., or even ditches, not for the purpose of making the water flow upon the adjacent land, but for the purpose of improving and cultivating his land, and making it more healthy. He is not, however, to ameliorate his own land to the injury of his neighbor.
</div>

the adjacent land, but for the purpose of improving, by cultivation, his land, and making it more healthy ; and laid down the equitable rule, that he ought not to ameliorate his own land to the injury of his neighbors. "*Sic debore quem meliorem agrum facere, ne vicini deteriorem faciat.*" *Digest, law* 1, *section* 4.

Tested by these principles, and according to the evidence in the record, we find it difficult to concur in the conclusion to which our learned brother in the district court has arrived,. that the canals dug by the plaintiff on his land were only such as he had a right to make, for the purposes of cultivation, nor are we enabled to say whether the dam constructed by the defendant, to counteract the injurious effects of such works upon his land, be more than adequate to that purpose. While, therefore, we express our regret, that such a controversy should not be settled by amicable compromise, in such a manner as to reconcile the interests of the parties, we are bound to say, that in our opinion, justice requires the case should be remanded for a new trial.

It is, therefore, ordered, adjudged, and decreed, that the judgment of the District Court be avoided and reversed, and, that the case be remanded for a new trial ; the costs of the appeal to be borne by the plaintiff and appellee.