SUSANNAH BROWN, Appellant, v. THOMAS K. ARMSTRONG, Appellee.

Drainage of surface water: INTERFERENCE WITH NATURAL FLOW:
1 ESTOPPEL. One land owner has no right to interfere with the natural flow of surface water by damming the natural channel and casting the water back upon his neighbor, but the owner of the dominant estate may, by acquiescence, be estopped from insisting upon these rights, or he may have abandoned his rights so that the owner of the servient estate may have acquired a right to turn the water back onto the dominant estate.

Drainage: ESTOPPEL: EVIDENCE. Where a dike between adjoining
2 land owners was originally constructed by plaintiff's grantor, and plaintiff and her grantor had acquiesced for many years in the system of drainage so constructed, plaintiff was estopped from claiming that defendant should drain the water of a pond or the overflow therefrom in a different manner. Under the evidence it is held that defendant was not obstructing the natural flow and the plaintiff was estopped to question defendant's right to drain his land in the established manner.

*Appeal from Wapello District Court.*— HON. ROBERT
SLOAN, Judge.

TUESDAY, APRIL 4, 1905.

THIS is an action to restrain defendant from maintain-
ing a ditch or dam along a private lane between plaintiff's
and defendant's land in such a manner as to obstruct the
natural flow of surface water, and from keeping open a ditch
at the west end of the lane, and from damming a ditch on
the south side of the lane in such manner as to increase the
flow of water on plaintiff's land.    Defendant denied the alle-
gations in the bill, pleaded plaintiff's acquiescence in the
scheme of drainage, an abandonment by plaintiff of any
rights she may have had, and other matters to which we may
refer during the course of the opinion.    The trial court dis-
missed plaintiff's petition, but taxed one-fifth of the costs
to the defendant.    Plaintiff appeals.— *Affirmed.*

*Jaques & Jaques,* for appellant.

*McElroy & McElroy,* for appellee.

DEEMER, J.— Plaintiff owns the north half of the south-
east quarter of section 22, and the defendant the south half
of the same quarter section.    Between the two tracts is a
private right of way or lane leading to defendant's house,
and other improvements.    To the east of both tracts, and
abutting thereon, is a county highway running north and
south, along the west side of which is a ditch which carries
surface water southward into a creek or natural stream.
Plaintiff claims that the natural flow of surface water was
southward from her land onto that belonging to the defend-
ant, and that defendant has constructed a dam or dyke on
the north side of the private right of way in such a manner
as to obstruct the flow of surface water across his land, and
that at the westerly end of a ditch, constructed on the south

side of the private way, defendant has so ditched, dammed, and drained the water as to cause it to flow over plaintiff's land in a manner other than as nature provided. This is all denied by the defendant; and he further pleaded that the system of drainage existing when this suit was commenced was established long years ago by the consent and with the acquiescence of plaintiff's grantors, and that whatever rights she might otherwise have had have been abandoned by her and her grantors. He also claims that the dyke or dam between plaintiff's and defendant's land was constructed by plaintiff's grantors, and that he (defendant) has acquired the right to have the water cast back on plaintiff's land. As to the cut and fill at the west end of the private lane, defendant denies that it changes the natural flow of the water, and claims that whatever went upon plaintiff's land was trifling and inconsequential, and of no damage to the plaintiff.

The rules of law for such cases are well understood. While surface water has been spoken of in the books as a common enemy, it is well established in this State that when

1. DRAINAGE OF SURFACE WATER: interference with natural flow; estoppel.
water, no matter what its character, flows in a well-defined course, be it only in a swale, and seeks discharge in a neighboring stream, its flow cannot be arrested or interfered with by one landowner to the injury of another. *Wharton v. Stevens,* 84 Iowa, 107; *Vannest v. Fleming,* 79 Iowa, 638; *Waverly v. Page,* 105 Iowa, 225. The owner of a servient estate has no right to either dam the surface water and cast it back upon his neighbor, or to collect the same in a body and precipitate the same in increased or unnatural quantities, or in a different manner from the natural flow thereof, to the damage of his neighbor. *Livingston v. McDonald,* 21 Iowa, 160; *Collins v. City,* 91 Iowa, 293; *Holmes v. Calhoun Co.,* 97 Iowa, 360. On the other hand, the owner of the dominant estate may by consent, either express or implied, estop himself from relying upon these rights, or he may so abandon his rights

as that the owner of the servient estate may acquire a counter easement to have the water turned back upon the dominant estate. *Vannest v. Fleming,* 79 Iowa, 638; *Wharton v. Stevens, supra; Bizer v. Ottumwa,* 70 Iowa, 145. We have also said that where surface water has no defined channel, but spreads out over the land without a well-defined course, it may be turned by the landowner in any direction. *Wharton v. Stevens, supra.*

In natural order we have to determine, first, whether or not defendant is unlawfully obstructing or accelerating the natural flow of surface water, and, second, whether or not

2. DRAINAGE: estoppel; evidence.

plaintiff or her grantors have acquiesced therein in such a manner as that defendant has acquired counter or adverse rights which should be protected. In such cases it is always difficult to ascertain the condition of the ground as nature left it, on account of the fading memory of witnesses, and the natural changes brought about through cultivation of the land. It appears from the testimony that originally there was a pond covering something like two acres of ground on the southeast quarter of section 22, four-fifths of which was on the land now owned by the plaintiff, and one-fifth on the land of the defendant. Much of the water in this pond had no outlet, but before any improvements were made upon the land, when there was a heavy fall of water, some of it escaped from the pond by running over defendant's land, both in a southeasterly and in a southwesterly direction; but at no time was the pond completely drained. Save for the overflow, the water escaped through evaporation. One Simpson, who sometime owned the entire quarter section, ran a fence so as to separate the tract into two eighty-acre pieces, but before building the fence, in order to raise it out of the water in the pond, he ran several furrows with a plow through the pond in such a manner as to raise the level of the ground along the line of the intended fence several inches above the natural level. Along this line he built his fence. Thereafter he sold the

south eighty-acre tract to the defendant, and the north one to one Reeves. After Reeves purchased the north eighty, and before the private lane between the two tracts was improved, he, Reeves, dug a ditch from the pond eastward to the county highway running north and south, and thus took care of the overflow from the pond. This was done more than fifteen years ago. Plaintiff purchased the land from Reeves, and reconstructed the fence which had been erected by Simpson or Reeves, although not exactly on the same line, but along a ridge, created by nature or the hand of man, which was higher than the bed of the pond or the surrounding land. Shortly thereafter the private lane was improved by the defendant, he throwing up the center and making a ditch along the south side thereof. This ditch operated to drain the pond which was on his part of the land eastward toward and into the highway. This ditch has so drained the pond on his side of the lane that the land covered thereby has been reclaimed and reduced to a state of cultivation. About the center of his land, east and west, there is a natural divide, and, to carry off the water from the lane, he constructed a ditch on the south side thereof westward, toward his improvements. This ditch ran down to near his barn, and water sometimes followed the wagon tracks in the lane down into his barn lot. To obviate this, he filled up the ditch on the south side at its west end, and cut another diagonally across the lane, thus casting the water upon another part of his land, from which it naturally flowed upon plaintiff's premises — that being the natural course of the water. Plaintiff claims that defendant, in improving the lane, and to keep the water in the pond on her, plaintiff's, land, from flowing across the lane onto his, defendant's premises, threw up a dam or dyke under the fence on the north side of the land in such a manner as to cause the water to back up upon and overflow her land and to prevent its following its natural course down over the defendant's land. This is denied by the defendant, and we are inclined to agree with him in his

contention that he did not increase the height of this dyke under the fence beyond what it was when originally erected by Simpson, the common grantor of these parties. The ditch dug by the defendant had the effect of draining that part of the pond on his own land, and had the ditch constructed by Reeves on the north side of the lane as a means for getting rid of the overflow on the land now owned by the plaintiff, and as a part of the general drainage scheme, been kept open, it would have taken care of all the water which, in the course of nature, would have come down on the defendant's land. It certainly would have taken care of all the water which would have gone over the dam constructed by Simpson at the time he built his fence. For more than fifteen years there was an attempt made by plaintiff or her grantors to take care of the water in this pond by draining it off to the eastward into the ditch on the west side of the north and south highway. For nearly that length of time defendant has maintained the grade of the private lane or right of way, and has kept the ditch on the south side thereof open, so as to drain that part of the pond which was on his land into the highway ditch. Under this state of facts, plaintiff is in no position to insist that the dyke constructed originally by her grantor be torn down, and she be allowed to turn the water from the pond on her land into defendant's ditch on the south side of the lane. She may easily open the ditch on the north side of the lane which has been called the " Reeves Ditch," and thus avail herself of the scheme adopted by the former owners of the land for getting rid of this pond and its overflow. As plaintiff and her grantors acquiesced in this general scheme of improvement for many years, and in fact devised and planned it, she is in no position to claim that the defendant, by ditches or otherwise, should take care of the pond or the overflow therefrom. There is no difference in principle between this case and the Vannest and Wharton Cases, *supra*.

II. As to the filling of the ditch and the cutting of

the new one at the west end of the lane, there is not sufficient evidence to show that defendant in any manner changed the natural flow of the water, or that he collected and discharged the same in any other manner than it was naturally wont to go. At most, a trifling amount of additional water would go upon defendant's land, which at this point drains toward the northwest, and there is no showing of any damages resulting therefrom. Defendant at this point collected and discharged the water upon his own land, and whatever portion of it found its way onto plaintiff's premises was due, after all, to the natural lay of the land.

The decree of the trial court seems to be correct, and it is *affirmed.*