131　511
135　189

131　511
143　223

E. L. MATTESON, Appellant v. B. F. TUCKER, Appellee.

**Surface water:** DRAINAGE: REMOVAL OF OBSTRUCTIONS: BURDEN OF
1 PROOF. One may protect his land from surface water diverted
upon it by artificial means, and one seeking to remove an
embankment constructed for that purpose, on the ground that
it obstructs the natural flow over plaintiff's land, has the
burden of showing that his is the dominant estate and that,
unobstructed, the surface water naturally flows from his land
over that of the adjacent owner. Evidence held insufficient to
sustain this burden.

**Embankment:** RIGHT TO MAINTAIN: LIMITATION. Where an em-
2 bankment for the purpose of preventing the flow of surface
water over one's land has been maintained without objection
for a period of thirty years, equity will not require its re-
moval at the suit of the adjacent owner, or restrain its re-
pair and maintenance at the original height.

*Appeal from Lee District Court.*— HON. HENRY BANK,
Judge.

THURSDAY, APRIL 5, 1906.

REHEARING DENIED WEDNESDAY, SEPTEMBER 26, 1906.

ACTION in equity to enjoin the defendant from building
and maintaining upon his premises a certain embankment or
dike. The material facts are stated in the petition. There
was a decree dismissing the petition, and plaintiff appeals.
—*Affirmed.*

*D. F. Miller* and *Herminghausen & Herminghausen,*
for appellant.

*T. B. Snyder,* for appellee.

WEAVER, J.— The plaintiff and defendant are, re-
spectively, the owners of the N. W. ¼ and the S. W. ¼ of

section 4, township 68, range 3 in Lee county, Iowa. The Skunk river, coming from the northwest diagonally through section 33 in township 69, strikes the north line of the plaintiff's farm at or near its northeast corner, where it bends southward, flowing along the east line of plaintiff's said land to the northeast corner of the land owned by defendant, at which point it bends again to the east. To the south and west of the river, along the course described, is a large area of low and nearly level land, which includes all or most of the tracts owned by the parties to this controversy. In times of high water much of this land is naturally subject to overflow. The deposits of sand and earth from the overflowing waters, being more abundant and heavier near the parent stream, have had the effect, in places at least, to build up a natural dike or embankment along its banks, with the result that, when the water has reached a height to escape over this barrier of its own making, it tends to flow inland and across the bottoms, until it is taken up by the soil or enters some branch or bayou through which it rejoins the principal stream or empties into the Mississippi below its junction with the Skunk river. Some distance to the southwest of both parties hereto is a waterway known as Lost creek. Originally it seems to have been a sluggish stream, which, on reaching the lower ·flats, lost the characteristics of a water course and spread its waters over the adjacent lands. To relieve this situation a ditch had been constructed across the flats to the Mississippi river below the mouth of the Skunk river, thus extending Lost creek to an outlet. A strip or depression some twenty to thirty rods wide and slightly lower than the land on either side, and called by some of the witnesses a " swale," extends from the northeast to the southwest across the lands of both ·plaintiff and defendant to Lost creek on . section No. 8. Whether this so-called swale slopes to the southwest or to the northeast is a matter of considerable dispute in the record. Indeed, if it is to be conceded that all the witnesses who have been familiar with the premises for

many years are correct in their sworn statements, we shall
be forced to conclude that the law of gravitation is of uncer-
tain influence in that neighborhood, and that water will
sometimes flow up hill. The most reasonable conclusion is
that, while there are some slight differences in surface eleva-
tions, the neighborhood, as a whole, is so nearly at a common
level that an overflow of any serious proportions coming in
from any direction has a tendency to cover the entire area.
For instance, a break in the river levee on the north
sends its waters southward across the lands of plaintiff and de-
fendant, and especially along the so-called swale to Lost
creek; and, on the other hand, in times of freshet, the water
from the river to the east and south sets back through the
ditch above mentioned into Lost creek, and thence northward
over the same swale. The accompanying plat is quite in-
complete, but may assist in making clear some of the princi-
pal features of the situation.

In this litigation the claim of plaintiff is to the effect
that his land is higher than that of defendant, and, by reason
of such situation, the surface and flood waters upon his

premises would, if unobstructed, naturally flow upon and across the premises of defendant, but that defendant, in violation of such right, has constructed a dike or levee near the partition line, by which the water is set back and detained upon plaintiff's said land to his injury. The claim is denied by defendant, who alleges that the dike referred to is one which has been erected and maintained for twenty-five years or more without objection, and that the waters, with the flow of which it is charged said dike interferes, are not such as flow in that direction under natural conditions, but have been changed and diverted from their natural course by human agencies. From the foregoing statement it will be readily observed that the difficult questions in this case are those of fact. A large number of witnesses were examined on either side in the court below, and their testimony in complete transcript, as well as in abstract, has been sent up for our consideration. The record is entirely too great to make practicable any attempt at its rehearsal in this opinion, and we shall confine ourselves to stating, as briefly as is practicable, the conclusions at which we have arrived.

I. The burden is on the appellant to show, among other things, that his is the dominant estate. In other words, he must prove that his land in its natural condition is relatively higher than that of defendant, so that the former will be relieved in some material degree of his burden of surface water by permitting its unrestricted flow in the direction of the latter. In this respect we think he has not made a clear case. The differences in levels or elevations between the two tracts is, as we have already said, by no means marked, and, even if we should find that these slight differences are in his favor, we should be compelled to say there is no sufficient showing that the waters naturally flowing from or across his land are set back thereon by the appellee's dike or levee. Indeed, it is hardly too much to say that natural conditions affecting the inroads of water upon these lands and their escape there-

1. SURFACE WATER: drainage: removal of obstruction: burden of proof.

from no longer exist. From an early day in the settlement of the neighborhood, property owners have been engaged in promoting and perfecting various improvements looking to the reclamation and protection of these low lands. Some of these improvements, including a levee along the southwest bank of Skunk river in front of the lands now under consideration, have been erected by the united and common effort of the people interested. Other levees have been built and ditches excavated as matters of private enterprise by individual proprietors, each upon his own land. Highway grades have been thrown up in different directions. A railway grade extends from southwest to northeast a little west of the lands of the parties to this action, interfering to a greater or less degree with the natural flow and spread of overflow waters. Some thirty years ago there was constructed upon the land of appellee a levee about three feet in height, extending from the river levee west along the boundary of said land and the land of the appellant about forty-five rods to the eastern margin of the swale, thence southwesterly along the east side of the swale to a union with another levee constructed by other parties, making a continuous structure to a terminus at a sand ridge near the southeast corner of the section. It is this levee of which appellant complains. The evidence tends fairly to show that the effect of all the improvements referred to, and especially of the railway and highway grades, and of a ditch dug by the appellant from the railway south to his boundary line and near the defendant's levee, thence east toward the river, has been such that, in times of flood, more water is sent in the direction of appellee's land than would be the case under natural conditions. This is also true of the waters coming from the south through the ditch connecting the river and Lost creek and thence north through the swale. Against this danger of injury from the artificial conditions by which his lands are affected, we think the appellee has a right to protect his premises. Under the

strict rule of the common law there could be no question as to this right. Gould on Waters, sections 263–265.

By the civil law, however, where two adjacent tracts of land are not of a common elevation, the lower estate owes a servitude to the upper to receive all the natural drainage in its direction, and the lower cannot reject, nor can the upper withhold, the supply, except as this obligation may be modified by the reasonable demands of good husbandry. *Martin v. Jett*, 12 La. 501 (32 Am. Dec. 120); *Adams v. Harrison*, 4 La. Ann. 165; *Butler v. Peck*, 16 Ohio St. 334 (88 Am. Dec. 452); *Livingston v. McDonald*, 21 Iowa, 160. This court has never adopted either rule in its entirety, though the general principle of the civil law in this respect, and especially as applied to rural lands has frequently been approved. Livingston v. McDonald, *supra;* *Vannest v. Fleming,* 79 Iowa, 641; *Wharton v. Stevens,* 84 Iowa, 107; *Brown v. Armstrong,* 127 Iowa, 175; *Keck v. Venghause,* 127 Iowa, 529. It has never been held that, in addition to the burden of natural drainage, the lower proprietor is required to receive the drainage diverted in his direction by artificial means or agencies, in the absence of circumstances estopping him to object thereto. *Martin v. Jett,* 12 La. 501 (32 Am. Dec. 120); *Wheatley v. Baugh,* 25 Pa. 528 (64 Am. Dec. 721); Livingston v. McDonald, *supra.*

While it is a matter of dispute between witnesses, we think the record fairly shows that the railway embankment, above referred to, serves to intercept the water which, moving from the west, would naturally escape by a more direct route to Lost creek, and carry it northeast where, passing through openings or culverts in the railway grade to the appellant's land, it spreads again to the southward. Some of these waters doubtless reach Lost creek by way of the swale, while others are carried by appellant's ditch to the north line of appellee's land, and thence eastward. This theory is not only supported by the direct testimony of the observers, but finds corroboration in the fact that, after the

construction of the railroad, appellant or his immediate grantor demanded and received from the railway company substantial damages, on the theory that the embankment was so constructed as to subject his land to an unnatural burden from flood and overflow waters. From the circumstances mentioned, and others we cannot extend this opinion to mention, we are inclined to the view that the levee maintained by the appellee does not operate to obstruct the natural drainage of appellant's land, and that its maintenance affords the latter no cause of action. The levee complained of is not thrown across the course of the swale, and we think that, but for the unnatural increase of the floods from the causes already referred to, it would cast no water back upon the appellant.

II. Even if we are in error in respect to some of the material facts involved in the foregoing discussion, there can be no doubt that the maintenance of the appellee's levee for thirty years (three times the period prescribed by the statute of limitations), without hindrance or objection, is a sufficient defense to an

2. EMBANKMENT: right to maintain: limitations.

action for its condemnation and removal. *Brown v. Armstrong,* 127 Iowa, 175. This proposition is not seriously disputed by the appellant, but it is alleged and urged that, at the time this action was instituted, appellee was intending, and had in fact begun, to materially increase the height of the levee. Assuming, for the purposes of the case, that appellee has no legal right to materially increase the height of the levee, the evidence is insufficient to prove any attempt or purpose on his part so to do. It appears that after an overflow, shortly before this action was begun, appellee did undertake to repair his levee at or near the east terminus, and for a distance of some twenty-five yards threw up fresh earth upon the embankment to the depth of several inches. He states his purpose to have been no more than to restore the embankment, which had there been worn away, to its original proportions, and we find nothing in the record to justify us

in saying that his explanation is not candid and truthful. The only item of testimony to the contrary is the assertion of one witness that appellee threatened to " make Matteson's house swim "; but, as this is explicitly denied, we are not disposed to regard the alleged incident as of- controlling importance. There can be no question that, if we are right in holding the levee as originally built is not an actionable infringement upon the appellant's rights, no obligation rests upon appellee to permit the embankment to settle and wear away under the influence of the elements, thereby decreasing from year to year the protection it affords him; but he may lawfully repair and rebuild it as the occasion may require, without exposing himself to interference by a court of equity. Brown v. Armstrong, *supra*. In our judgment this right was not exceeded by the appellee.

The trial court had the witnesses before it, and gave to the case long and patient consideration; and, after a thorough investigation of the record as presented on appeal, we are satisfied with the conclusion there announced.

The decree is *affirmed.*