W. B. Hatton, Mary Hatton and Peter Finnerty, Appellees, v. James Cale, Appellant.

**Drainage:** EASEMENTS: ACQUIESCENCE. Where a drainage ditch was 1 constructed with the knowledge and consent of the owner of the land through which it runs, for the purpose of conveying the surface water from the higher land into a natural outlet, and it had been maintained without objection on the part of such owner or his grantees for more than ten years, an easement or enforceible right therein was thus acquired; and the fact that the original owner did not have record title to his land at the time the agreement was made is immaterial, where he and his grantees afterward knew of the claimed right to maintain and use the ditch and acquiesced therein.

**Same:** ABANDONMENT OF EASEMENT: EVIDENCE. Where there has 2 been a nonuser of an easement for such a period of time as is required to gain the easement by user, an abandonment may be inferred; generally, however, nonuser alone is insufficient to establish an abandonment, but should be considered in connection with other circumstances indicating an intention to abandon the right. In this action the evidence is not sufficient to support the claimed abandonment of the right to maintain a drain over defendant's land.

**Same:** EXECUTED AGREEMENT: STATUTE OF FRAUDS. An executed agree- 3 ment to permit the construction and maintenance of a ditch over the land of another for the purpose of draining it and lands of the other party is more than a parol license, and is not revocable at pleasure: And is not within the statute of frauds when executed.

**Same:** NOTICE OF EASEMENT. The mere existence of a drainage ditch 4 puts a purchaser of the land on inquiry as to the authority under which it is being maintained, regardless of any record notice.

*Appeal from Lee District Court.*—Hon. Henry Bank, Jr., Judge.

Saturday, October 21, 1911.

SUIT in equity to enjoin and restrain defendant from constructing and maintaining a dam in an artificial ditch across certain lands owned by the respective parties. The defendant filed a cross-bill, in which he asked an injunction against the plaintiffs, forbidding them from opening or cleaning out the ditch. The case was tried to the court upon the issues joined, resulting in a decree for plaintiffs as prayed, and an order dismissing defendant's counterclaim. Defendant appeals. *Affirmed.*

*Hollingsworth & Blood*, for appellant.

*D. F. Miller*, for appellees.

DEEMER, J.—Plaintiffs Hatton own the N. ½ of the S. W. ¼ of section 5, and plaintiff Finnerty the S. ½ of the N. W. ¼ of the same section. Defendant owns the S. ½ of the N. E. ¼ of section 5, all in the same township and range. It thus appears that plaintiffs own one hundred and sixty acres of land and defendant eighty acres immediately to the east of and adjoining the eighty acres owned by plaintiff Finnerty. What is known as Jack creek runs in a southeasterly direction through the west forty acres of defendant's land. Practically all of the entire two hundred and forty acres is in what is called "Second bottom," adjacent to the Mississippi river, and the entire land of which this two hundred and forty acres is a part is called the "Montrose bottoms." Immediately to the west of plaintiffs' land is a row of hills running in a northeasterly direction from the Mississippi river to some distance north of the land in controversy. These hills begin to rise from the extreme western part of the lands owned by plaintiffs. These hills are broken by hollows, gorges, and ravines which carry surface water out onto and upon the bottoms. The dwelling houses of the plaintiffs are near to these hills and not far from gorges

or ravines which come out of them; one of the ravines being north of plaintiff Finnerty's house and the other just south of the one owned and occupied by Hatton. The land owned by plaintiffs is generally higher than that owned by defendant, although through the east part of Finnerty's land, and running from near the north side thereof in a southeasterly direction down past the corner common to the three eighty-acre tracts, and onto what is known as the Kennedy land, which is just south of the west forty of defendant's land, is a ridge which, as nature left it, deflected the water coming down out of the hills in a northeasterly direction around the north end of the ridge to a point near the north side of plaintiff Finnerty's land, and from there it turned in an easterly and southeasterly direction, and spread out over the defendant's land. Some of the surface water as it came out of the hills onto Hatton's land passed in a southeasterly direction over the Kennedy land, and finally emptied into Jack creek.

Years ago plaintiffs' and defendant's grantors opened up a ditch on the Finnerty land just north of the line between his land and that owned by Hatton for the purpose of carrying the water which came out of the hills almost directly eastward through the ridge heretofore referred to and upon the land now owned by defendant, and from the mouth of this ditch the water passed over defendant's land into Jack creek. Other ditches were built near the foot of the hills where the ravines came down near the dwelling houses owned by plaintiffs so as to carry all the water coming out of these ravines into the ditch on the Finnerty land, and onto the land now owned by the defendant. There is a dispute in the testimony as to just when this work was done, and we shall have more to say about this matter presently. This ditch across the Finnerty land through the ridge hitherto described frequently became clogged, and for a time was cleaned out by the plaintiffs. Defendant purchased his land in the

year 1897 from one Bullard (who purchased from Camp-bell), paying him (Bullard) $3,500 in cash therefor, and he claims, not only that plaintiffs had no right to maintain the ditch, but, if they had, that he had no notice of any easement over the land. Campbell acquired his title in the year 1885, and there is no showing as to who owned the land prior to the year 1885. This artificial ditch having become clogged, defendant claims that the plaintiffs on at least two occasions during the years 1903 and 1904 went to the defendant and endeavored to secure from him per-mission to open the ditch through the ridge in order to carry the water through the same and out onto and across defendant's land. Defendant says that he denied this right, and that without further negotiations within a few days thereafter Finnerty or his man, and Morgan, a tenant on the Hatton place, opened up the ditch, working in the cut and also out on the flat, the work on the cut being the clearing out of the ditch or cut and making it deeper, and the work out on the flat consisting of throwing up em-bankments on each side with a ditch between so as to pro-duce an aqueduct leading the water from the ditch up between the houses on the higher land across the flat and into the cut at an elevation which together with the fresh cut made in the ditch would permit the water to pass through and come out onto defendant's land. The first freshet after this discharged much water and sediment upon defendant's land, and he immediately noticed it and called upon Finnerty, and charged him with having opened up the ditch, which Finnerty did not deny, but merely replied that Hatton claimed that it was his water, and he claimed it was Hatton's, and thus saddled upon the de-fendant the burden that neither of the plaintiffs was willing to take of disposing of the water. The defendant then placed a dam in the ditch upon his own land, and it was to remove this dam and enjoin its continuance that this action was brought.

So far, there is little or no dispute as to the facts, save as indicated in the statement, but, for a better understanding thereof, we here attach a copy of a plat introduced upon the trial in the court below, and known as "Exhibit No. 2."

Although plaintiffs claim that defendant owns the servient estate, they frankly admit that the ditch in question does not follow the natural course of drainage, and that they are not entitled to have it maintained except upon the theory that the ditch was constructed pursuant to a license or grant from the owner of the servient estate, or by reason of the use and maintenance thereof with the knowledge, consent, and approval or acquiescence of the owner of the servient estate for more than ten years. They

assert, however, that there was such a grant or at least a parol license based upon a sufficient consideration secured from the then owner of the land now owned by defendant, and they further claim that by reason of adverse possession they are entitled to maintain and use the ditch without interruption by the defendant. On the other hand, defendant denies that plaintiffs ever secured anything more than a permissive use of the ditch as constructed, deny that they ever secured any right to do so from the then owner of the land now owned by him, aver that if plaintiffs ever had any right to maintain the ditch they abandoned the same, that there is no proof other than the use of the ditch to establish adverse possession, and further claim that plaintiffs' rights never amounted to more than a parol license to use the land of defendant, which license was revocable at pleasure. Defendant also pleads that he purchased the land now owned by him for a valuable consideration and without notice of the plaintiffs' present claims. That the exact nature of plaintiffs' claim may be understood we here quote from their petition the following:

That twenty years or more ago, by agreement of parties in interest, and by the owners of the respective parcels of land hereinafter mentioned, a certain ditch was dug for the purpose of carrying off water that flowed from the hillsides west and northwest of the property owned by plaintiffs, over plaintiffs' land, and onto the land lying east of them into a creek known as Jack creek that empties into the Mississippi river at or near the town of Montrose, in Lee county, Iowa. . . . That for the past twenty years the water accumulating on the land west and north of plaintiffs' land, and flowing east, as heretofore mentioned, collected in said ditch and flowed easterly through same between the land owned by plaintiffs Hatton and plaintiff Finnerty, and between the land owned at one time by ——— Campbell and Martha A. Kennedy; that the parties who owned the land in the southwest part of the N. E. ¼ of section 5, and in the northwest part of

the S. E. ¼ of section 5, consented to the construction of the said ditch at the time the same was dug, and to the flowing of water through same in its course to Jack creek, and that it had been used for the past twenty years for the purpose of drainage, as hereinbefore set out.  . . . Plaintiffs represent that by reason of the original contract between the party who then owned the land now held by defendant and between other parties in interest, and by reason of the length of time the said water has been permitted to flow through the said ditch onto and over the land of the said defendant, the statute of limitations has run in favor of the said plaintiffs and against the said defendant, and that the said defendant had no right to obstruct the said waterway.  By the length of time the water has been accustomed to flow through the said ditch, that same had acquired the character of a watercourse, and defendant had no right to obstruct the free flow of water through same.

In an amendment to their petition they alleged:

That the party who owned the land now owned by plaintiff Peter Finnerty, at the time of the making of the contract or agreement, referred to in said paragraph 4 and paragraph 8, is dead, and the party who at the time of making this said contract or agreement, referred to in said paragraphs, owned the land now owned by plaintiffs W. B. Hatton and Mary Hatton, and described in the first paragraph of their petition, is a nonresident of the state of Iowa; that the said contract in reference to digging the ditch was made between the parties heretofore referred to, so far as the digging of the ditch is concerned, between the N. ½ of the S. W. ¼ of section 5 and the S. ½ of the N. W. ¼ of section 5; that prior to the time of the digging of the ditch referred to in the said original petition the water was accustomed to flow off of the ground and hill west of the said two pieces of land and onto the said two tracts of land and into a certain ditch and carried it onto the land in the N. E. ¼ of section 5, township 66, range 5-W, and then into Jack creek; that, with the consent of the party who then owned the N. E. ¼ of said section 5, township and range aforesaid, the ditch was made as now constructed and as set out in the

original petition, and by oral agreement between one Lucis Campbell, who at the said time owned all of the N. E. ¼ of section 5, and Martha A. Kennedy, who owned the N. W. ¼ of said section 5, a ditch was dug as described in paragraph 4 of plaintiffs' petition; that plaintiffs are unable to set out the substance, terms, or conditions of the contract, but state the facts to be that the said ditch was dug as described in plaintiffs' petition between eighteen and twenty years ago, and that water has continued to flow through same continuously in case of melting snow, or rain, from the time it was first constructed until the time it was obstructed by the defendant in this case.

Such is the case made for plaintiffs in the pleadings. The trial court after hearing the testimony, made the following finding:

The court finds that more than ten years prior to the commencement of this suit a certain ditch had existed and was constructed near the half section line between the N. W. ¼ and the S. W. ¼ of section 5, township 66 N., range 5-W., in Lee county, Iowa, running through the greater portion of the land owned by the defendant in the same section, township, range, and state; that the said ditch was dug for the purpose of carrying the water off of plaintiffs' land and the surrounding lands and into Jack creek, passing over the land of defendant in manner and form as described in plaintiffs' petition; that the said ditch had been dug by consent of parties in interest, and that water had flowed through the same continuously and over defendant's land for more than ten years prior to the commencement of the suit, and by reason thereof an easement had been established in favor of plaintiffs for the flow of the said water through the said ditch, over the land of defendant into Jack creek, and the statute of limitations had run in favor of plaintiffs and against the defendant.

This finding is challenged by the defendant, while plaintiffs insist that it is sustained by the testimony. There is not much difference between counsel as to the law of the case and our conclusion must rest primarily on

the facts.   The testimony, as we think, shows without con-
tradiction that some time between the years
1881 and 1886 plaintiffs' grantors, with
the express consent of and by agreement
with one Campbell, one of defendant's remote grantors,
constructed the ditch in question, that it ran over and
into the land now owned by defendant and then claimed
by Campbell, and that Campbell staked out the ditch on
the land claimed by him in order that it might take off
some of the water on the land now owned by the defend-
ant.   That he, Campbell, who it is claimed then owned
the land now owned by defendant, agreed to the construc-
tion of the ditch or acquiesced therein, and that he located
the course thereof, is well established by the testimony.
As the ditch was constructed through sandy soil, it re-
quired cleaning, and that this was done without objection
from Campbell or from anyone owning the land down
until the year 1903 or 1904 is also well settled.   But de-
fendant says that the record discloses Campbell did not
own the land at the time the agreement was made, hence
the agreement, or Campbell's acquiescence, is of no force
or effect.   But the record shows that he was in possession
of the land and claimed to own it at the time the ditch
was dug; that he, in fact, acquired the record title in
April, 1885; and that he never made any objection to the
ditch after he became the owner of the record title.   More-
over, there is no showing that his grantee, Bullard, ever
made any objection to the ditch or to plaintiffs cleaning
it out, and that no objection was made by anyone until
defendant acquired the title, and that he did not object
until six or seven years after he had purchased.

Under this state of facts, the law as announced in
*Vannest v. Fleming,* 79 Iowa, 638, is quite applicable.
It is there said:  "It is shown by the evidence, indeed,
the defendant so testified that the ditch referred to in the
first part was made upon defendant's land before he owned

*1. DRAINAGE:
easements:
acquiescence.*

it by the farmer who then owned and cultivated the land. It seems that the defendant's grantor and the plaintiff or his grantor were in accord with their views as to the ditch, and its course through the two tracts of land, and, either by expressed agreement, or by mutual and silent acquiescence in the manner pursued by each in the improvements, by drains, of their remaining land, agreed upon the construction of the ditch and the line it should pursue. Its place of crossing the dividing line of the land in this manner was settled. The law will not permit complaint to be now made of the location and manner of construction of the ditch, after it had been acquiesced in by the parties. The right of the parties demand that the ditch should remain a settled matter. Good husbandry forbids the changing of the ditch." See, also, *Brown v. Armstrong,* 127 Iowa, 175; *Hull v. Harker,* 130 Iowa, 190.

The mere fact that Campbell did not have the record title to the land when the agreement was made is not controlling, for, after obtaining title, he knew of the claims of plaintiffs' grantors and acquiesced therein. Defendant concedes that for a time at least plaintiffs or their grantors kept the ditch cleaned out, and that water flowed through the same as originally contemplated.

But he says that many years ago the plaintiffs and their grantors abandoned the same, and that at the time he purchased the ditch had caved in, and the sides and 2. SAME: bottom thereof had become covered with a abandonment of easement: growth of trees, underbrush, and grass to evidence. such an extent that water did not flow through the same, and that, because of this abandonment, plaintiffs lost whatever claim they may have had to the ditch. Primarily the question of abandonment is one of intent, but, of course, that intent is to be inferred from the circumstances shown.

Going to the record, it is clear to our minds that neither plaintiffs nor their grantors ever intended to aban-

don the ditch.   Indeed, their actions · and conduct show
that they were always depending upon it, that they, in
fact, cleaned it out many times, and constantly maintained
the dykes on either side of the ditch, where it passed
through the low places on their lands.   There is a sharp
dispute in the. testimony as to whether any water passed
through the ditch after defendant's purchase of the land;
but the preponderance of the testimony shows, as we think,
that it did carry the surface and overflow waters as in-
tended during practically all of the time.   As it was not
designed to carry water from springs or a living stream,
it was always dry for a good part of the season, but it
never became so clogged that it did not carry overflow and
surface waters.   The extent of this flow will be better
understood when we state that the record shows that, when
defendant constructed the dam on his own place to keep
the water off his land, he had to fill a ditch on his own
land, washed out by the waters which came from the land
in question, something like fifteen feet deep and from fif-
teen to eighteen feet in width.   In order to hold the water,
he made this dam wide enough on top so that he could
drive a team across it.   True, the defendant says it was
not so large when he first saw it, but he does admit that
at that time it was five or six feet deep.   The sharpest
conflict in the testimony is over the claimed abandonment
of the ditch.   As to that we think the preponderance is
with the plaintiffs.   But conceding this is not true,
and that the water stopped flowing through the ditch for
some time, yet we find other testimony which negatives
any thought of abandonment on plaintiffs' part.   The
effect of nonuser of an easement has thus been stated by
an able text-writer:

"In some cases an abandonment of an easement is in-
ferred from a nonuser of the right.   But though this is
true, under certain circumstances, it is believed never to
apply unless the nonuser shall have been of as long dura-

tion as the period that is required in order to gain the easement by user, and rarely, if ever, unless there has been, besides, such a use by the owner of the premises in or over which the easement has been enjoyed as to indicate a claim of right which is adverse to the enjoyment of the easement. Here, as in the case of acts of abandonment, the nonuser must be of such a character and duration as to show an intent to abandon the easement, or it must have induced another to expend money upon the supposition of such abandonment, which is known and acquiesced in by the one who might otherwise claim it, and where to enforce the right of easement would work injustice upon an innocent party." Washburn's Easements and Servitudes (3d ed.), p. 669.

Again, at pages 673 and 674, the same author says: "In respect to the effect to be given to a mere nonuser of an easement which has been acquired by adverse user or prescription, although the language of some of the cases would imply that, if continued for twenty years, it would be of itself an abandonment, it is believed that such nonuser is in no case anything more than evidence of an intent to abandon the right; that it never applies when the period of such nonuser is less than the period of limitation, and is open to explanation and to be controlled by evidence that the owner of the easement, did not intend to abandon it while omitting to use it." This further quotation is made from the same author because of its relevancy to the proposition now being discussed: "The owner of an easement may destroy his right to the same by actually abandoning the right as well as the enjoyment, especially if a third party become, interested in the servient estate after such act of abandonment; and it would operate unjustly upon him if the exercise of the easement were resumed in favor of the dominant estate. It is not easy to define in all cases what would be such act of abandonment as would destroy a right of easement, and each case seems

to be a matter for a jury to determine. But nothing short of an intention so to abandon the right would operate to that effect, unless other persons have been led by such acts to treat the servient estate as if free of the servitude, and the same could not be resumed without doing an injury to their rights in respect to the same." Washburn's Easements and Servitudes (3d ed.), p. 661.

Again, in Gould on Waters, it is said: "After the acquisition of an easement by prescription is complete, it may be lost by abandonment, when the facts or circumstances clearly indicate such an intention. Nonuser is one element in determining such intention, and, if long continued, is presumptive evidence that the right is lost. But a jury is not bound to infer an abandonment from nonuser alone, though continued for more than twenty years. If the nonuser was merely for the convenience of the owner of the dominant tenement and those under whom he claims, and without any intention to abandon the right, such right still continues; and, if the nonuser is not accompanied by acts showing an intention to abandon, evidence of adverse possession, as well as nonuser, is necessary to effect the extinguishment, although no declaration of abandonment is made." Gould on Waters, section 348.

The testimony shows that plaintiffs and their grantors frequently cleaned out the ditch, and that plaintiff Hatton, who leased his land to a nephew of the defendant for the years 1896 and 1897, had a provision in the lease whereby the lessee agreed to keep the ditch cleaned out. The trial court did not err in finding there was no abandonment. But defendant contends that there is no testimony aside from mere user to establish the claim of prescription or adverse possession. This contention is without merit. The plaintiffs introduced ample testimony tending to show a claim of right to the ditch pursuant to an agreement with Campbell. This being true, the case falls within a long line of our previous cases of which *Schofield*

*v. Cooper,* 126 Iowa, 334; *Dorr v. Simmerson,* 127 Iowa, 551; *Geneser v. Healy,* 124 Iowa, 310; *Loveless v. Ruffcorn,* 143 Iowa, 221, and *Matteson v. Tucker,* 131 Iowa, 511, are types.

Again, it is argued for appellant that, at most, plaintiffs obtained nothing more than a parol license to use the ditch which was revocable at the instance of defendant or any of his grantors. Reliance is here placed upon *Jones v. Stover,* 131 Iowa, 119; *Friday v. Henah,* 113 Iowa, 425, and other cases. The difficulty with this proposition is that plaintiffs' grantors secured something more than a parol license. Under the facts disclosed, they not only acquired an easement, but went upon the land now owned by defendant, and there dug a ditch which was to take care of the water on that land as well as that coming across their own. The case is not within the statute of frauds for the reason that the agreement was fully executed and plaintiffs and their grantors immediately began to make use of the easement. The case in this respect is ruled by *Vannest v. Fleming, supra; Cook v. Chicago, B. & Q. R. R.,* 40 Iowa, 451; *Decorah Co. v. Greer,* 49 Iowa, 490; *Ruthven v. Farmers Co.,* 140 Iowa, 570, which clearly points out the distinction between this case and *Jones v. Stover, supra; Wickersham v. Orr,* 9 Iowa, 259, and other like cases.

*3. SAME: executed agreement: statute of frauds.*

Lastly, appellant claims that when he purchased the land in the year 1897 he had no notice of the claimed easement; that he paid a valuable consideration for the land; and that, as there was no written and recorded instrument showing the conveyance of the easement, no decree should have been entered against him. In making this contention counsel overlook the fact that the ditch in question was a continuous one; that it ran onto and across the land purchased by defendant, and was open and obvious. This is all the notice that was required. *Cook v. Railroad,* 40 Iowa, 451. Having notice

*4. SAME: notice of easement.*

of the ditch, defendant was bound to inquire under what authority it had been excavated. Record notice was unnecessary. *Agne v. Seitsinger*, 85 Iowa, 305.

Assuming that the burden was upon plaintiff of showing notice to the defendant, they have clearly met this burden by showing possession. Defendant's claim that plaintiffs asked his permission to open the ditch before proceeding to clean it out just before he (defendant) built the dam, and that this request was framed in such a way as to indicate they were then making no claim of right in the ditch, is not sustained by the record. The defendant's own testimony is such as to sustain the claim, but this was denied by the other parties present, and there is no reason to believe that this so-called request was other than a neighborly statement or warning as to what they intended to do. The close question in the case is upon the issue of abandonment. The testimony with reference thereto is very conflicting and difficult of explanation. Doubtless this was one of the reasons why the court went with counsel and viewed the premises. What the trial judge saw on this trip can only be known as it is reflected by the decree. A view of the premises may have had a most important bearing in settling the dispute between the witnesses as to this matter of abandonment. This being true, we are not justified in saying that the trial court was in error in its finding of facts on this issue. None of the cases cited and relied upon by appellant run counter to the views hitherto expressed. We shall not review them all, as it would unduly extend an opinion already too long. We have already noticed the *Jones-Stover* case and need only say of *Preston v. Hull*, 77 Iowa, 309, that it is not in point, for the reason that nothing but user was shown in that case. The same observation is applicable to *McBride v. Bair*, 134 Iowa, 661, and other like cases. Plaintiffs had fully acquired their prescriptive rights before defendant purchased his land and the use made of the

ditch and the reason for its construction was fully apparent to him. By reason of that fact, he was placed upon inquiry to find out why it was constructed.

The decree seems to be right, and it is *affirmed*.