M. S. DOWNEY et al., Appellees, v. ANNA PHELPS et al.,
Appellants.

**WATERS AND WATERCOURSES:** Surface Waters—Interference by
Dikes—Burden of Proof. The maintenance of a dike along lands
for the purpose of warding off *backwater* from a river may not be
enjoined by an adjoining landowner unless he shows (1) that his
lands constitute the *dominant* estate and the diked lands the servient
estate, and (2) that the dike *materially and substantially* interferes
with surface drainage. *High* lands which are last covered by
*backwater* from a river are not servient to adjoining *low* lands which
are first covered by such backwater. (See Book of Anno., Vol. 1,
Sec. 7736.)

Headnote 1:  40 Cyc. pp. 643 (Anno.), 657 (Anno.)

*Appeal from Mahaska District Court.*—CHARLES A. DEWEY,
Judge.

APRIL 6, 1926.

ACTION to enjoin the defendants from maintaining a levee,
or dike, on defendants' land, which dike, the plaintiffs claim,
obstructs the flow of water from the plaintiffs' lands. The court
granted an injunction, as prayed, and the defendants appeal.
The facts appear in the opinion.—*Reversed.*

*Irving C. Johnson,* for appellants.

*C. Ver Ploeg* and *Devitt & Eichhorn,* for appellees.

FAVILLE, J.—The lands involved in this suit are bottom
lands in Mahaska County, lying adjacent to the South Skunk
River, on the north side. The Skunk River was originally a
crooked and tortuous stream. A drainage district was estab-
lished in the territory in question, and a drainage ditch con-
structed, which created a comparatively straight channel for the
river. The accompanying plat does not purport to be a correct
map of the premises in controversy, but only a plat indicating
the general situation, which may aid in understanding the
question involved.

As is shown on the plat, the lands of the defendants lie east of the lands of the plaintiffs. The defendants' lands extend to the river. The lands of the plaintiff Downey adjoin the defendants on the west for the length of three forties. The land of the plaintiff Fred Else lies west of the south forty of the defendants' land. The land of the other plaintiffs lies farther to the west and north. There is a depression, referred to as a swale, or pond, near the northwest corner of the defendants' land, that extends upon the land of Downey to the west and north, as indicated on the plat. There is also a similar depression upon the lands of the defendants and Downey, as shown on the plat, near the southeast corner of Downey's land. There is a channel, or abandoned river bed, called "Elephant Run," that extends across the defendants' south forty, somewhat parallel to the river. The dike constructed by the defendants is

indicated in the plat. It nearly incloses three sides of the farm, which contains more than 300 acres. The dike is a substantial embankment made of dirt, all of which was taken from the defendants' premises. It is from three to six feet in height above the ground level. The dike extends along the west side of the defendants' land through the two ponds, or swales, that lie partly on the defendants' lands and partly on the lands of the plaintiff Downey. A ditch was constructed by the defendants immediately west of the dike on the defendants' lands, the purpose of which is to carry the water along the side of the dike and discharge it into Elephant Run. The dike runs through the swales somewhat as shown on the plat.

There is a conflict in the evidence in regard to the natural flow of the ordinary rainfall or surface water that falls upon the plaintiffs' lands. There is evidence tending to show that the general course of the natural drainage of all of the lands in the valley of the Skunk River is to the south and southeast, which is the general course of the river. We are satisfied from the record that the evidence sufficiently shows that the construction by the defendants of the dike in question does not materially and substantially interfere with the ordinary flow of what may properly be termed surface water: that is, the water that falls upon the plaintiffs' lands from natural rainfall, without consideration of overflow or backwater from the river or freshets or floods. Actual measurements made by the only engineer who testified in the case show that there is a ridge or higher elevation on the defendants' lands, extending generally north and south through the west side of the three forties of the defendants' lands. The elevations show said ridge or rise of ground to be higher than the adjacent lands of the plaintiff Downey. The necessary result from this condition would be that the ordinary and usual rainfall upon the lands of the plaintiff Downey would have a tendency to flow to the south, and not over the ridge upon the lands of the defendants. The ditch extending north and south next to the plaintiff Downey's land appears to be substantially in the course of the drainage of surface water, as shown by the elevations. The evidence shows that from the northwest corner of the defendants' land to Elephant Run, about three fourths of a mile, there is a fall of 5.6 feet. The

average fall of the valley appears to be about 1.6 feet per mile. The purpose of the construction of the dike upon the defendants' land was to meet the assault thereon of overflow, or flood waters, that accompany freshets in the valley of the Skunk River. The evidence shows that the river comes out of its banks practically every year, and extends over the entire width of the valley. The ditch in question was constructed in the years 1920, 1921, and 1922. The first construction of the defendants' dike was in the fall of 1920, and improvements have been made upon it since that time. There is no question that the construction of the dike by the defendants results in protecting the defendants' lands from the overflow of the river which inundates the valley; while, at the same time, the lands of the plaintiffs, which are not protected by such dikes, are subject to overflow. There is evidence to the effect that the water has stood upon the land of the plaintiff Downey at a depth of two feet, next to the defendants' lands, at a time when, by reason of the dike, the lands of the defendants were protected from overflow, and were comparatively dry. The practical effect is much the same as though the defendants had, by filling in, raised the entire level of their farm above that of the surrounding valley, so that, in time of flood waters extending over the entire valley, their farm would present practically an island. The plaintiffs seek to enjoin the defendants from so using their premises.

In *Matteson v. Tucker,* 131 Iowa 511, 516, we said:

"By the civil law, however, where two adjacent tracts of land are not of a common elevation, the lower estate owes a servitude to the upper to receive all the natural drainage in its direction, and the lower cannot reject, nor can the upper withhold, the supply, except as this obligation may be modified by the reasonable demands of good husbandry. *Martin v. Jett,* 12 La. 501 (32 Am. Dec. 120); *Adams v. Harrison,* 4 La. Ann. 165; *Butler v. Peck,* 16 Ohio St. 334 (88 Am. Dec. 452); *Livingston v. McDonald,* 21 Iowa 160. This court has never adopted either rule in its entirety, though the general principle of the civil law in this respect, and especially as applied to rural lands, has frequently been approved. *Livingston v. McDonald,* supra; *Vannest v. Fleming,* 79 Iowa 641; *Wharton v. Stevens,* 84 Iowa 107; *Brown v. Armstrong,* 127 Iowa 175; *Keck v. Veng-*

*hause,* 127 Iowa 529. It has never been held that, in addition to the burden of natural drainage, the lower proprietor is required to receive the drainage diverted in his direction by artificial means or agencies, in the absence of circumstances estopping him to object thereto. *Martin v. Jett,* 12 La. 501 (32 Am. Dec. 120); *Wheatley v. Baugh,* 25 Pa. St. 528 (64 Am. Dec. 721); *Livingston v. McDonald,* supra.''

In *Keck v. Venghause,* 127 Iowa 529, we said:

''It is undoubtedly true that a riparian owner may repel the water and cause it to flow in the channel of the stream which it has left, if by doing so he inflicts no injury on his neighbor. If an injury to the lower land will as certainly occur without the embankment, because of the natural overflow, the party seeking an injunction must prove that the additional water cast upon his land will in fact damage him * * *.''

The evidence shows that the valley of the Skunk River is subject to overflow practically every year, and sometimes more than once a year; that at such times of overflow the water extends in various widths across the valley, but that the lands of the plaintiffs and the defendants herein are largely subject to being inundated by such overflow, and that the crops are destroyed or injured thereby; that the general course of the river valley is to the southeast and east, but that there are varying elevations upon different tracts of land which affect the natural flow of the ordinary rainfall or surface water. The evidence tends to show that, as between the lands of the plaintiff Downey and the defendants, the general course of the surface water, except in the two swales or ponds referred to, is toward the south. As to the upper or northern swale or pond, we are satisfied from the evidence that the plaintiff Downey suffers no substantial damage by reason of the construction of the dike across or through the said swale or pond. A ditch is constructed west of the said dike, extending from the said swale or pond, southerly in the general course of the low land, as shown by the elevations, and this ditch delivers the water from said swale into Elephant Run, from which it ultimately reaches the river.

The construction of the dike across the southern swale or pond, which lies upon the lands of both the plaintiff Downey and the defendants, raises a more doubtful question, under the record

in the case. The dike a short distance below this swale forms a sharp angle, and, as shown on the plat, the defendants have constructed a small ditch leading from the swale across their land and through the dike, permitting the water from the portion of the swale on their lands to thus reach Elephant Run. The construction of the ditch leading through the portion of this swale on the land of the plaintiff Downey, and furnishing an outlet therefor into Elephant Run upon the defendants' lands, appears, however, to be a sufficient provision to carry the ordinary rainfall that would flow through the swale or pond from the land of the plaintiff Downey upon the lands of the defendants.

The record in this case discloses the obvious difference between the action of flood water from a river and ordinary rainfall. It is true that all water seeks its level, but a tract of land is not necessarily a servient estate as to *all* water that may come upon it from another tract. Here the lands of the river valley are inundated by the overflow of the river. The waters no doubt originally flow from the high land to the river. But the river channel fills, and the river ''comes out of its banks'' and spreads over the valley. There is evidence that in this particular valley there are higher lands nearer to the river than those lying immediately back, but the bottom lands generally slope upward from near the river to the foot of the outlying bluffs. The rise is more than five feet in less than a mile. When the waters leave the river and spread over the valley, as they increase in depth, they submerge the higher lands last. In a quite accurate sense it may be said that the waters ''pile up'' on the lower lands until they reach such depth that they flow upon the higher lands. The whole body of water is, however, moving down the valley. One would hesitate to contend that, in this spreading out of the waters by such an overflow from the river, the higher lands which were last inundated by water that passed over the lower lands from the river became thereby ''the servient lands,'' and the lower lands were the ''dominant lands.'' A very different condition is presented in the case of an ordinary rainfall, where the water falls uniformly upon a certain area at one time, and then follows the course of natural drainage from a higher to a lower elevation, from a dominant estate upon a servient estate.

The settled policy of this state, while not recognizing in

full the rule of the civil law, by constitutional amendment and by statute is to promote the construction of levees and ditches for the reclamation of agricultural lands. Where a plaintiff seeks injunctive remedy, as in this case, the burden is upon him to show, among other things, that his is the dominant estate. *Matteson v. Tucker*, supra. The artificial changes that have been made in the Skunk River valley have, no doubt, had a substantial effect upon the action of the waters in relation to the lands lying therein. The burden rested upon the plaintiffs to establish that their lands in their natural condition were relatively higher than the lands of the defendants, so that the plaintiffs would be relieved in some material degree of the burden of surface water by permitting its unrestricted flow upon the land of the defendants.

At this point we think the plaintiffs have failed to clearly and sufficiently carry the burden thus imposed upon them. The evidence in behalf of the plaintiffs is to the general effect that the flow of the water in the valley of the river is to the south and east, in the general course of the stream; but this general movement of flood waters is not determinative of the question of dominant and servient estates as to the natural surface waters falling on said lands. This must be determined largely by the elevations of the lands. The fact that a flood several feet in depth, confined between the bluffs that border the valley of the river, moves, in its general course, to the south and east, is not determinative of which is the dominant and which the servient estate, as between two adjacent tracts of land, both of which may be wholly submerged by the flood waters. Which is the servient and which the dominant estate in regard to the ordinary surface waters is determined by the relative elevation of the respective tracts, although it may be true that in times of flood both are entirely submerged and inundated.

Under the evidence in this case, we think that the plaintiffs have failed to establish that the land of the defendants is the servient estate and that the land of the plaintiff Downey is the dominant estate as to ordinary surface water. As before stated, there is not only evidence tending to show that the general course of the surface drainage between the lands of Downey and the defendants is in a southerly direction, but the elevations, which

are not controverted or in dispute, show that there is a ridge upon the land of the defendants extending north and south, which is higher than the adjacent lands of Downey. If the defendants' land is not servient to that of Downey, it is not to that of the other plaintiffs, whose land is dominant to Downey's.

A very careful examination of the entire record leads us to the conclusion that the plaintiffs, outside of the plaintiff Fred Else, have failed to establish that their lands are the dominant estate under natural conditions, and that the defendants have obstructed the natural and ordinary flow of surface waters in such a way as to divert the same upon the lands of the plaintiffs and cause substantial injury thereto.

A different situation exists as to the plaintiff Fred Else, whose lands are overflowed lands, lying next to the river, which are dominant to the lands of the defendants lying immediately east thereof. But the lands of the defendants that are servient to the lands of the said Else lie south of the dike constructed by the defendants, and there has been no substantial interference with the flow of the waters from the land of the plaintiff Else upon that of the defendants.

We are of the opinion that the plaintiffs have failed to carry the burden, and to sufficiently establish that the construction of the improvement in question by the defendants has materially diverted the natural flow of surface waters from the lands of the plaintiffs, and also that the plaintiffs have suffered any substantial injury which they would not otherwise have suffered, but for the construction and maintenance of the improvement by the defendants. When the river comes out of its banks and overflows and inundates the entire valley, injury to all crops necessarily results. There is evidence tending to show, and it is a matter of common knowledge, that, if the waters recede rapidly, less damage is done than if the waters remain standing upon the growing crops for a long period of time.

Upon the showing made, we are of the opinion that the plaintiffs should have been denied the relief granted by the trial court.

The defendants' motion for abatement ordered submitted with the case is overruled.

The decree appealed from is—*Reversed.*

DE GRAFF, C. J., and EVANS, STEVENS, ALBERT, and MORLING, JJ., concur.